I

**CM/ECF FILED**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
x-----------------------------------------------x
In re

ADVANCED CHIMNEY, INC.,

Debtor.

Chapter 11

Case No.: 08-74464-ast
x-----------------------------------------------x

**PLAN OF REORGANIZATION**

Advanced Chimney, Inc., ("Advanced" or "Debtor") debtor and debtor-in-possession proposes the following plan of reorganization ("Plan") pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. Section 1121(a) (the "Bankruptcy Code").

**ARTICLE I**

**DEFINITIONS**

For purposes of this Plan, the following terms shall have the respective meanings as hereinafter set forth;

1.1    "**Administrative Claim**" shall mean a claim for any cost or expense of administration of the Chapter 11 Case allowed under 11 U.S.C. §503(b) including, but not limited to: (i) Any actual and necessary costs and expenses of preserving the Debtor's estate and of operating the Debtor's business; (ii) all allowances of compensation for legal, accounting or other professional services or reimbursement of costs to the extent allowed by the Court or otherwise pursuant to 11 U.S.C. §§330, 331, 503, and/or 506; and (iii) all fees and charges assessed against the Debtor's estate pursuant to 28 U.S.C. §1930.

1.2    "**Advanced**" shall mean the Debtor herein, Advanced Chimney, Inc.

1.3    "**Allowed Administrative Claim**" shall mean all or that certain portion of an Administrative Claim which is an Allowed Claim.

1.4     "**Allowed Claim**" shall mean a Claim (i) in respect of which a proof of claim has been filed with the Clerk on or before the date designated by the Court as the last date for filing proofs of claim and to which no objection to the allowance thereof has been filed prior to the final date for filing such objections in any order of this Court; (ii) that was scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent, or unliquidated; (iii) that after objection thereto, such sum in whole or in part as has been allowed by the Court by a Final Order; or (iv) a Claim that has been granted pursuant to a Final Order.

1.5     "**Allowed Priority Claim**" shall mean all or that certain portion of a Priority Claim which is an Allowed Claim.

1.6     "**Allowed Secured Claim**" shall mean all or that certain portion of an Allowed Claim that is secured by a valid and perfected lien or security interest against or interest in property of the Debtor to the extent of the value of the interest of the holder of such Allowed Claim in such property determined in accordance with 11 U.S.C. §506.

1.7     "**Allowed Unsecured Claim**" shall mean any Allowed Claim that is not otherwise an Allowed Administrative Claim, an Allowed Priority Claim, or an Allowed Secured Claim.

1.8     "**Ballot**" shall mean the form transmitted to creditors on which they may vote to accept or reject the Plan pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure ("FRBP") and 11 U.S.C. §1126.

1.9     "**Bankruptcy Code**" shall mean Title 11 of the United States Code, as amended and in effect as of the Filing Date.

1.10  "**Bankruptcy Rule**" shall mean the Federal Rules of Bankruptcy Procedure as applicable to cases under Title 11 of the United States Code.

1.11  "**Bar Date**" shall mean the date fixed by order of the Bankruptcy Court by which proofs of claim of various categories must be filed against the Debtor, which date has been fixed by the Bankruptcy Court as December 29, 2008.

1.12  "**Business Day**" shall mean any day other than a Saturday or Sunday or legal holiday, as such term is defined in F.R.B.P. Rule 9006.

1.13  "**Cash**" shall mean legal tender of the United States of America or cash equivalents.

1.14  "**Chapter 11**" shall mean Chapter 11 of the Bankruptcy Code.

1.15  "**Chapter 11 Case**" shall mean the above captioned case commenced under Chapter 11 of the Bankruptcy Code by the Debtor on the Filing Date, to wit, Advanced Chimney, Inc., Case No. 08-74464.

1.16  "**Claim**" shall mean a right to payment against the Debtor, as such term is defined in 11 U.S.C. §101(5).

1.17  "**Claimant**" shall mean the holder of a Claim.

1.18  "**Class**" shall mean a category of substantially similar claims and refers to the specific class of Claimants of Allowed Claims as classified in Article IV below.

1.19  "**Confirmation**" shall mean the approval of the Plan and entry of the Confirmation Order.

4

1.20 "**Confirmation Date**" shall mean the date upon which the Order of Confirmation in entered by the Court.

1.21 "**Confirmation Deposit**" shall mean the specific sum of $70,000.00 deposited by the Debtor with its Counsel before the Effective Date of the Plan for intended distribution to certain Creditors or Classes.

1.22 "**Confirmation Hearing**" shall mean the hearing pursuant to 11 U.S.C. §1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

1.23 "**Confirmation Order**" shall mean the order of the Court approving the Plan in accordance with Chapter 11.

1.24 "**Court**" or "**Bankruptcy Court**" shall mean the Bankruptcy Court unit of the United States District Court for the Eastern District of New York or such other Court having subject matter jurisdiction over this Chapter 11 case.

1.25 "**Creditor**" shall mean:

    (i)    an entity that has a Claim against the Debtor that arose at the time of or before the order for relief concerning the Debtor; or

    (ii)    an entity that has a Claim against the Debtor's estate of the kind specified in 11 U.S.C. §§348(d), 502(f), 502(g), 502(h) or 503(i).

1.26 "**Debtor**" shall mean Advanced Chimney, Inc, who filed the instant voluntary petition under Chapter 11 of the Bankruptcy Code.

1.27 "**Default**" shall have the specific meaning set forth in XIV below.

1.28 "**Disallowed Claim**" shall mean any Claim or that certain portion thereof that has been disallowed or denied by the Court by a Final Order.

1.29 "**Disclosure Statement**" shall mean the document, and any amendments thereto, which is filed by the Debtor with the Court in connection with this Plan pursuant to 11 U.S.C.

§1125 and those portions of same which contain adequate information to enable Claimants to make an informed decision in voting on the Plan.

1.30    "**Disputed Claim**" shall mean a Claim or that certain portion of a Claim other than an Allowed Claim, and which is either (i) scheduled by the Debtor as disputed, contingent or unliquidated; (ii) filed pursuant to §501 of the Bankruptcy Code as unliquidated or contingent; or (iii) filed pursuant to §501 of the Bankruptcy Code as to which an objection to the allowance has been interposed within the time limitations fixed by the Bankruptcy Code, an order of this Court, or this Plan and which objection has not been finally determined.

1.31    "**Effective Date**" shall mean the date thirty (30) calendar days after the Confirmation Date, provided the Confirmation Order becomes a Final Order.

1.32    "**Entity**" shall mean a person, estate, trust, or governmental unit, and shall include the Office of the United States Trustee.

1.33    "**Executory Contract**" shall mean any of the contracts and unexpired leases to which the Debtor is a party and was a party as of the filing date and which remain executory as of the Effective Date within the meaning of 11 U.S.C. §365.

1.34    "**Filing Date**" shall mean the 20th day of August, 2008, the day the Debtor filed the voluntary Chapter 11 Petition.

1.35    "**Final Order**" shall mean an order or judgment for which the time to appeal or seek review, rehearing, re-argument or *certiorari* has expired and no such review proceeding is pending, or such a reviewing proceeding was filed and the order or judgment has been affirmed, the time for further appeal has expired, or there is no further appeal pending.

1.36    "**F.R.B.P.**" shall mean the Federal Rules of Bankruptcy Procedure.

1.37 **"Person"** shall mean an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated organization, government, governmental agency or a political subdivision thereof.

1.38 **"Petition"** shall mean the voluntary Chapter 11 petition filed by Advanced Chimney, Inc., pursuant to §301 of the Bankruptcy Code on the Filing Date which was thereafter assigned case number 08-74464.

1.39 **"Plan"** shall mean the instant document and any and all modifications and/or amendments hereto.

1.40 **"Priority Claim"** shall mean all or that certain portion of an unsecured claim for which payment priority is alleged under 11 U.S.C. §507.

1.41 **"Professional"** shall mean the Debtor's counsel, the Debtor's accountant, or any other person employed by the Debtor under 11 U.S.C. §327.

1.42 **"Reorganized Debtor"** shall mean the Debtor which on and after the Effective Date shall include all of the assets of the Debtor.

1.43 **"Unsecured Claim"** shall mean a claim for which the claimant does not hold (a) a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtor; (b) a right to set-off to secure the payment of such claim; or (c) a claim which is entitled to priority pursuant to 11 U.S.C. §507.

1.44 **"U.S.C."** shall mean the United States Code.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1     Class 1 shall consist of :

All Allowed Administrative Claims.

2.2     Class 2 shall consist of :

The Allowed Secured Claim of the New York State Department of Taxation and Finance.

2.3     Class 3 shall consist of :

Two Allowed Unsecured Claims relating to two litigation proceedings where Debtor is a defendant.

2.4     Class 4 shall consist of:

All Allowed Unsecured Claims.

## ARTICLE III

## IDENTIFICATION OF CLASSES OF CLAIMANTS
## IMPAIRED OR UNIMPAIRED UNDER THE PLAN

3.1     Allowed Administrative Claims (Class 1), Allowed Unsecured Claims relating to litigation (Class 3) and Allowed Unsecured Claims (Class 4) are not impaired under the Plan except to the extent any Claimant thereunder has consented to a different treatment.

3.2     Allowed Secured Claims (Class 2) are impaired by the Plan and are entitled to vote or accept or reject the Plan.

3.3     In the event of a controversy as to whether any Claimant or Class of Claimants are impaired under the Plan, the Court shall, after notice and a hearing, determine such controversy.

Debtor believes a particular Claim belongs.

## ARTICLE IV
## PROVISIONS FOR TREATMENT OF
## CLASSES OF CLAIMS NOT IMPAIRED UNDER THE PLAN

4.1.    Allowed Administrative Claims (Class 1).

Each unpaid Allowed Administrative Claim (other than any such Allowed Administrative Claim or portion thereof which, by its express terms, is not due or payable by the Effective Date) shall be paid in full by the Debtor in the ordinary course of business or otherwise on the Effective Date in cash or on such other terms as may be agreed upon by a Claimant of an Allowed Administrative and the Debtor. All Allowed Administrative Claims that become due and payable after the Effective Date shall be paid by the Debtor or the Reorganized Debtor as and when due, with the limited exception that quarterly fees to the Office of the United States Trustee will be paid until entry of the Final Decree.

## ARTICLE V
## PROVISIONS FOR TREATMENT
## OF CLASSES OF CLAIMS IMPAIRED UNDER THE PLAN

5.1    Allowed Secured Claims (Class 2)

Class 2 is impaired and consists of the Allowed Secured Claim of the New York State Department of Taxation and Finance ("NYSDTF"), and will be paid in full as follows:

New York State Department of Taxation and Finance has filed a secured proof of claim in the amount of $661,619.91. This claim is based upon a sales tax liability which is alleged to have been incurred by the Debtor for tax year 2006 and interest and penalties which

have accrued thereon. NYSDTF has agreed to reduce its Claim to an Allowed Secured Claim in the amount of $300,000.00. This amount will be paid to NYSDTF in full, plus interest fixed at 9% per annum or the statutory rate of interest, whichever is lower, but without any penalty, in nine (9) equal installments of 1/9th of the allowed amount. The first payment shall be made on the Effective Date, followed by an additional 1/9th payment every six (6) months thereafter until the Allowed Secured Claim is paid in full.

5.2    Allowed Unsecured Claims relating to Litigation (Class 3)

Class 3 is unimpaired and consists of the Allowed Unsecured Claims of two Plaintiffs in two unrelated subrogation proceedings pending against the Debtor. All such Allowed Claims are satisfied as follows:

5.2.1    United National Specialty Ins. Co. a/s/o 1685 Pitkin Avenue LLC ("United National") is the plaintiff in a subrogation proceeding commenced pre-petition, and currently pending, against the Debtor in the United States District Court for the Eastern District of New York under case number 1:08-cv-00435-CLP. This action was commenced by United National to recover sums paid by United National to its insured, in connection with a fire at United National's insured's premises due to alleged negligence on the part of Debtor and/or its agents. United National has filed a proof of claim in the amount of $433,063.85, the amount sought in the subject proceeding. The Debtor and United National have entered into a stipulation whereby United National has agreed to waive its right to file any proof of claim in this Chapter 11 Case, for any sum whatsoever, and has waived its right to pursue any claim against the Debtor and any principal, employee, successor, agent, or assign of the Debtor, in exchange for the Debtor stipulating to relief from the automatic stay to allow United National to pursue its claim against Debtor's insurance company for the amount set forth in the subject litigation proceeding. Thus,

the Debtor will make no payment with respect to this Claim, and is relieved from any and all responsibility to tender payment thereupon.

5.2.2    Allstate Ins. Co. a/s/o Jean M. Caligiuri ("Allstate") is the plaintiff in a subrogation proceeding commenced pre-petition and currently pending against the Debtor in the Supreme Court of the State of New York, County of Suffolk, under index number 07-26208. This action was commenced by Allstate to recover sums paid by Allstate to its insured, in connection with a fire at Allstate's insured's premises due to the alleged negligence on the part of Debtor and/or its agents. Allstate has filed a proof of claim in the amount of $25,078.52, the amount sought in the subject civil proceeding. The Debtor and Allstate have entered into a stipulation whereby Allstate has agreed to waive its right to file any proof of claim in this Chapter 11 Case, for any sum whatsoever, and has waived its right to pursue any claim against the Debtor and any principal, employee, successor, agent, or assign of the Debtor, in exchange for the Debtor stipulating to relief from the automatic stay to allow Allstate to pursue its claim against Debtor's insurance company for the amount set forth in the subject litigation proceeding. Thus, the Debtor will make no payment with respect to this Claim, and is relieved from any and all responsibility to tender payment thereupon.

5.3    Allowed General Unsecured Claims (Class 4)

Class 4 consists of all Allowed Unsecured Claims, including claims arising from the rejections of executory contracts and unexpired leases. This class is unimpaired. All allowed claims in this class shall be satisfied by the payment, in cash, of one hundred percent (100%) of each Allowed Unsecured Claim, without any interest or penalty thereon, at the sum certain and in effect as of the Filing Date, if not otherwise a Disputed Claim. Payment shall be made as a direct payment from the Reorganized Debtor in nine (9) equal installments of $1/9^{th}$ of 100% of

the allowed amount. Therefore, each of the nine (9) payments will be comprised of approximately 11.11% of the total allowed claim as semi-annual payments. The first payment shall be made on the Effective Date followed by an additional 1/9th payment every six (6) months thereafter. These nine (9) total payments over a four (4) year period will amount to a One Hundred Percent (100%) total distribution of the amount allowed, in full and complete satisfaction of all liability. Any payment to be made pursuant to this section may be prepaid in whole or in part at any time by the reorganized Debtor in its sole discretion without penalty and any remaining installments will be proportionately reduced. Based upon the scheduled debts as well as the filed and allowed claims to date, the total amount owed to this class is $123,709.01. Thus, this class will be paid nine (9) payments of $13,745.45, divided amongst the seven (7) creditors of this class, pro rata, in full satisfaction of any and all claims against the Debtor, and Debtor-In-Possession. In no event will holders of Allowed Claims in this class received more than One Hundred Percent (100%) of its Allowed Claim, without interest.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

6.1    Each impaired Class of Claims shall be entitled to vote to accept or reject the Plan.

6.2    A Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-third in dollar amount and more than one-half in number of the Allowed Claims of such Class that have accepted or rejected the Plan.

6.3    In the event that any impaired Class of Claims with Claims against the Debtor's estate shall fail to accept the Plan in accordance with §1129(a) of the Bankruptcy Code, the Debtor will request that the Court confirm the Plan in accordance with §1129(b) of the Bankruptcy Code.

# ARTICLE VII

## PROVISIONS CONCERNING DISTRIBUTION

7.1    Time of Distributions Under the Plan

Payments and distributions to be made by the Debtor on the Effective Date pursuant to the Plan shall be made by counsel for the Debtor on such date via regular mail to the Claimant's last known address, except as otherwise provided for in this Plan, or as may be ordered by the Court. All other payments after the initial payment shall be made by the Debtor directly.

7.2    Payment Dates.

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead by made without interest or penalty, on the next Business Day.

7.3    Manner of Payments Under the Plan.

Payments to be made by the Debtor pursuant to the Plan shall be made in Cash, by check drawn on a domestic bank or by wire transfer from a domestic bank. Any initial payment shall come from funds held by Counsel in the form of the Confirmation Deposit and will be distributed on the Effective Date, unless otherwise noted above.

7.4    Fractional Cents.

Any other provisions of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a round of such fraction to the nearest whole cent.

7.5    Unclaimed Cash.

Except as otherwise provided herein, in the event any Entity fails to claim any Cash within thirty (30) days from the date such Cash is distributed, such Entity shall forfeit all rights

thereto, and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a Disallowed Claim. In this regard, distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Court or, if no proof of claim is filed, on the schedules filed by the Debtor, or to such other address as may be designated by the Claimant in accordance with Section 15.2 below.

7.6     Disputed Payments or Distributions.

In the event of any dispute between and among Claimants (including the Entity or Entities asserting the right to receive the disputed payment or distribution) as to the right of any Entity to receive or retain any payment of distribution to be made to such Entity under the Plan, the Debtor may, in lieu of making such payment or distribution to such Entity, make it instead into a non-interest bearing Escrow Account or to a disbursing agent, for payment or distribution as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves.

7.7     Restrictions on Sale of Assets

Until all payments shall have been made to holders of Allowed Claims in Classes 1, 2, 3 and 4, as provided for under the Plan, the Reorganized Debtor undertakes and covenants that it shall not sell, assign or transfer assets of the Reorganized Debtor in bulk, out of the ordinary course of business, unless upon such a transaction the Cash and deferred consideration received or to be received shall exceed the then unpaid balance of any payments due and owing to the holders of Allowed Claims in Classes 1, 2, 3 and 4 and on further condition that such payments shall be prepaid upon the closing of title to any such transaction to the extent of the Cash consideration; the deferred consideration, to the extent necessary, shall be made payable to a

separate non-interest bearing account for the benefit of holders of Allowed Claims in Classes 1, 2, 3 and 4.

## ARTICLE VIII

## PROVISIONS CONCERNING DISCHARGE AND PROPERTY

8.1    Discharge of All Claims and Equity Interests

Except as otherwise provided herein, the rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims or Interest of any nature whatsoever, including any interest accrued thereon from and after the Filing Date, against the Debtor or the Debtor-in-Possession, or any of its assets or properties; and except as otherwise provided herein, upon the Confirmation Date, all such Claims against the Debtor or the Debtor-in-Possession shall be satisfied, discharged and released in full; and all Claimants shall be precluded from asserting against the Debtor or its assets or properties, any other or further claim based upon any act or omission, transaction, or other activity or any kind or nature that occurred prior to the Confirmation Date.

8.2    Vesting of Property in the Debtor.

Except as otherwise provided by the Plan, upon the Confirmation Date, title to all assets dealt with by the Plan shall pass to the Reorganized Debtor free and clear of all Claims in accordance with §1141 of the Bankruptcy Code.

## ARTICLE IX

## RELEASES AND TERMINATION

9.1    Releases.

Unless otherwise provided for in the Plan, on the Effective Date, assuming required payments shall been made, all Claims based upon guarantees of collection, payment or

14

performance, indemnity bonds or obligations, performance bonds, contingent liabilities arising out of the assignment of leases or contract obligations, or other similar undertakings made or given by the Debtor prior to the Filing Date, as to the obligations or performance by the Debtor shall be discharged, released and of no further force and effect.

Except as provided herein, however, nothing in the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties.

9.2    Certain Terminations.

On the Effective Date, all instruments evidencing indebtedness of the Debtor by the Plan shall be deemed, canceled, unless this Plan provides for the retention of liens.

9.3    Rights if Plan not Confirmed.

If Confirmation of the Plan does not occur, the Plan shall be deemed null and void, and in such event, nothing contained herein shall be deemed to constitute a waiver or release of any

Claims by or against the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor.

## ARTICLE X
## REJECTION AND ASSUMPTION OF EXECUTORY CONTRACTS

10.1    Any pre-petition Executory Contract or unexpired lease of the Debtor not expressly assumed or rejected by the Debtor, or which is not the subject of a pending application to assume or reject on the Confirmation Date, shall be deemed rejected and of no further force and effect of any nature whatsoever.

10.2    Any Entity whose Claim arises from rejection of an executory contract or unexpired lease shall, to the extent such Claim becomes an Allowed Claim, have the rights of a Class 4 Claimant with respect thereto.

10.3    Any Entity who has a claim against the Debtor by virtue of the operation of Section 10.1 above may file a proof of claim with the Clerk of the Court and serve a copy of same upon the Debtor and Debtor's counsel, in accordance with the notice provisions of Section 15.2 hereof, within thirty (30) days following entry of the Confirmation Date or order authorizing such rejection, whichever is later. If such Claim shall not be filed within the specified time, it shall be forever barred from assertion against the Debtor or any of their assets or property.

10.4    Any claim filed in accordance with the provisions of Section 10.3 above shall be treated as a Disputed Claim under Class 4 until the period of time has elapsed within which the Debtor may file an objection to such Claim.

# ARTICLE XI

## MEANS FOR EXECUTION OF THE PLAN

11.1    The Plan is to be implemented in a manner consistent with §1123 of the Bankruptcy Code.

11.2    The monies needed to pay the holders of allowed claims shall be generated from the Debtor's operation of its business and the Confirmation Deposit.  The Debtor estimates that the sum of no more than $118,538.51 is required for its initial distribution which includes approximately: (i) $60,000.00 for administrative claims; (ii) $44,793.06 for the New York State Department of Taxation and Finance; and (iii) $13,745.45 for unsecured creditors.  The initial distribution shall be paid from a combination of the operation of the Debtor's business and the Confirmation Deposit and will pay all administrative claims incurred prior to the Effective Date. Each subsequent distribution, in the amount of $58,538.51, shall be paid from the operation of the Debtor's business.

# ARTICLE XII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

12.1    Time Limit for Objections to Claims.

Objections to Claims shall be filed by the Debtor with the Court and served upon each holder of each of the Claims to which objections are made, not later than ten (10) days prior to the Effective Date or within such other time period as may be fixed by the Court.

12.2    Resolution of Disputed Claims.

Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdrawn objections to Disputed Claims, in its sole discretion, without notice to any party in interest.

12.3    Payments.

Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the Class of Creditors to which the respective holder of an Allowed Claim belongs unless otherwise ordered by the Court. Such payments and distributions shall be made as soon as practicable after the date that the Court entered a Final Order allowing such Claim. Payments made in accordance with this Article shall not include interest or penalty on the amount of such payment from the date on which the holder of the Allowed Claims would have been entitled to receive payment if its Claim has not been a Disputed Claim. Payments shall be made as and when a Disputed Claim has become, in whole or in part, an Allowed Claim or a Disallowed Claim, pursuant to a Final Order or agreement between the Debtor and such Claimant.

ARTICLE XIII

RETENTION OF JURISDICTION

13.1    Retention of Jurisdiction.

The Court shall retain jurisdiction of these proceedings following the Confirmation Date for the following purposes:

13.1.1    to hear and determine any objections to the allowance of Claims;

13.1.2    to determine any and all applications for compensation for Professional Persons and similar fees;

13.1.3    to determine any and all pending applications for the rejection or assumption of Executory Contracts, for rejection or assumption and assignment of same where Debtor is a party or may be liable, and to hear, determine, and liquidate (if applicable), any and all resulting claims;

13.1.4    to determine any and all applications, adversary proceedings, and contested or litigated matters properly before the Court and pending on the Confirmation Date;

13.1.5    to modify the Plan pursuant to §1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;

13.1.6    to hear and determined all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement or implementation of the Plan;

13.1.7    to hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Court in the Chapter 11 Case entered on or before the Confirmation Date;

13.1.8    to adjudicate all controversies concerning the classification of any Claim or Equity Interest;

13.1.9    to liquidate damages in connection with any disputed, contingent or unliquidated Claims;

13.1.10    to adjudicate all claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof;

13.1.11    to adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the Chapter 11 Case;

13.1.12    to recover all assets and properties of the Debtor wherever located, including the prosecution and adjudication of all causes of action available to the Debtor as of the Confirmation Date;

13.1.13    to determine all questions and disputes regarding recovery of and entitlement to the Debtor's assets and determine all Claims and disputes between the Debtor and any other Entity, whether or not subject to an action pending as of the Confirmation Date;

13.1.14    to enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary or appropriate;

13.1.15    to enter an order of consummation or Final Decree concluding and terminating the Chapter 11 Case; and

13.1.16    to make such orders as shall be necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof.

## ARTICLE XIV
## EVENT OF DEFAULT

14.1    Only the occurrence of either of the following shall constitute a default by the Debtor under the Plan:

14.1.1    The failure of the Debtor to make any payment when due under the Plan, which failure shall have been uncured for a period of thirty (30) days after the Debtor's receipt of written notice thereof unless such payment has been extended in accordance with the provisions of the Plan; and

14.1.2    The failure of the Debtor to comply with any of the specific covenants contained in the Plan, except for default in payment as provided in paragraph 14.1.1 above, which failure shall remain uncured for a period of thirty (30) days after the Debtor has received written notice of such failure.

## ARTICLE XV

## GENERAL PROVISIONS

15.1    <u>Modification of the Plan</u>

The Debtor reserves the right to further amend or modify the Plan before or after the Confirmation Date, pursuant to §1127 of the Bankruptcy Code.

15.2    <u>Notices.</u>

All notices, requests, elections or demands in connection with the Plan, including any change of address of any Claimant for the purposes of receiving distribution under the Plan or forfeiting same pursuant to Section 7.5 above, shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and (a) if sent to the Debtor, addressed to:

Advanced Chimney, Inc.
710-1 Union Parkway
Ronkonkoma, NY 11779
Attn: Michael Steeneck, President

with a duplicate complete copy to:

Macco & Stern, LLP
135 Pinelawn Road
Suite 120 South
Melville, NY 11747
Attn: Michael J. Macco, Esq.

All notices and requests to Claimants of any Class shall be sent to them at their last known address, which shall be the address on any filed proof of claim if one has been filed. The Debtor, and any claimant of any Class, may designate in writing any other address for purposes of this Section 15.2, which designation shall be effective upon receipt.

15.3   Headings.

The headings used in the Plan are inserted for convenience only and do not constitute a portion of the Plan or in any manner affect the provisions of the Plan.

15.4   Severability.

Should any provision in the Plan be determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

15.5   Governing Law.

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York.

15.6   Successors and Assigns.

The rights and obligations of any Entity named or referred to in the Plan shall be binding upon and shall inure to the benefit of, the successors and assigns of such Entity.

15.7    Reservation of Rights.

Nothing contained herein shall prohibit the Debtor from prosecuting or defending any of its rights as may exist on its own behalf.

Dated: Ronkonkoma, New York
May 1, 2009

ADVANCED CHIMNEY, INC.

By:  /s/ Michael Steeneck, President
     Michael Steeneck, President

Dated: Melville, New York
May 1, 2009

MACCO & STERN, LLP

By:  /s/ Michael J. Macco
     Michael J. Macco
     135 Pinelawn Road - Suite 120 South
     Melville, NY 11747
     (631) 549-7900